**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**JERRY WAYNE ROBERTS,**                                    **PLAINTIFF,**

**VS.**                                    **CIVIL ACTION NO. 1:03CV636–P-D**

**FMC TECHNOLOGIES, INC.,**                                    **DEFENDANT.**

<u>**MEMORANDUM OPINION**</u>

This cause comes before the court upon Defendant's Motion for Complete Summary Judgment [27-1]. Upon due consideration of the motion and the responses filed thereto the court is prepared to rule.

**I. FACTUAL BACKGROUND**

For 29 years Jerry Roberts, born on June 7, 1951, worked at FMC Technologies, Inc. FMC produces machinery and chemicals for the energy, food processing, air transportation, and agriculture industries. During the last 27 of those years, Roberts worked in the inspection department at FMC's facility in Tupelo, Mississippi.

In February 2003, FMC concluded that it had to institute a reduction in force (RIF) plan because the Tupelo facility was experiencing a marked loss in business due to the events of September 11, 2001. It is undisputed that FMC had already implemented several reductions in force, that FMC outsourced many products, and that the number of FMC employees in Tupelo dropped from a high of 450 to around 200 by February 2003.

Included in FMC's RIF plan was the reduction of the QA (Quality Assurance) Inspector positions from five to two. As of February 2003, the five QA Inspectors included: Jerry Roberts (51), Julie Price (50); Gary Bearden,(47), Jerry Spradling, (45), and Larry Cagle (37). It fell upon

Mitch Franks, who had been the QA Manager since December 2002 (some two months), to evaluate the five QA Inspectors using a pre-determined skill set and determine which two QA Inspectors would be retained. At that time, Franks possessed eight years of experience in manufacturing and four months in Quality Assurance. Based upon this experience, Franks created the following list of criteria to determine which QA Inspectors to retain: (1) blue print reading; (2) shop processes; (3) shop math; (4) versatility; (5) motivation; (6) flexibility; (7) communication; (8) welding knowledge; (9) problem identification; (10) problem solving; and (11) general inspection requirements.

Frank's evaluations of Roberts (51), Price (50), Bearden (47), Spradling (45), and Cagle (37) using the aforementioned criteria resulted in the retention of only Spradling and Cagle, the two youngest of the five QA Inspectors.

Until several months prior to this lay-off decision in February 2003, Roberts had been inspecting heavy welding, blast, and paint since March 1976. However, in August 2002 Cagle (37), who had been an assembler before he started inspecting, replaced Roberts in heavy welding, blast, and paint inspection. According to Roberts, he was the most experienced and qualified person in heavy welding and Cagle had come to him for advice on inspecting given areas. Roberts also avers that Cagle had been in the Quality Assurance department for only a few months at the time of the layoff and did not possess the experience or training the other QA Inspectors had.

Roberts asserts that after replacing him with Cagle in heavy welding, blast, and paint inspection, FMC appeared to be encouraging Roberts to quit by changing his shifts and duties on several occasions. For example, Roberts was moved to inspecting idlers for two weeks, then to

the second shift assembling idlers for approximately two months, then back to inspecting idlers for one month, then back to the second shift assembling idlers, and finally back to inspecting the screw conveyor department where he remained until the February 2003 layoff.

Roberts argues that the constant transferring and the RIF plan were used to unlawfully discriminate against him because of his age in favor of the two youngest QA Inspectors: Spradling and Cagle. According to the plaintiff, Franks, the Quality Assurance Manager for two months, was not experienced enough to apply the eleven factors mentioned above in a meaningful and accurate manner. The defendant admits that Franks rated the inspectors based upon "his own knowledge of each employee's job performance based on Franks' supervision of each inspector," that there were no tests or documents demonstrating the abilities of each of these skills, that there were no written instructions on how to rate each person, and that no document has been identified as having been relied upon for each ranking. Rather, according to Franks, the RIF was based "solely on [Franks's] evaluation." According to the plaintiff, the Franks's decision was nothing more than subjective.

Roberts posits that these factors, especially given Cagle (37) was retained despite his lack of experience and qualifications compared to Roberts's (51) twenty-seven years of experience in QA inspection and that over 80% of the persons laid off in February 2003 were over 40, demonstrate a prima facie case of age discrimination.

The defendant's instant motion for summary judgment retorts that Roberts cannot meet his burden in proving unlawful age discrimination because he can neither establish a prima facie case of age discrimination, nor can he establish pretext. FMC argues the absence of a prima facie case because Roberts has produced no evidence to establish that he was discharged because of

3

his age. Similarly, the defendant argues a lack of pretext for lack of evidence. Essentially, FMC argues that it had a legitimate, non-discriminatory reason for discharging Roberts; namely, that he was subject to a legitimate reduction-in-force plan because he did not score as well as the two retained QA Inspectors on the eleven factors used by the decision-maker.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id.* Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather,

"[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l031 (5 Cir. l982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5 Cir. l981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5 Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.*, at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.*, at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928,

939 (WD Tex. 1982).

## **B. Age Discrimination**

The ADEA provides in relevant part:

It shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ....

29 U.S.C. § 623(a).

The test for age discrimination in the Fifth Circuit has four stages. First, the plaintiff must prove a prima facie case of age discrimination by demonstrating "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (I) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age." *Rachid v. Jack In The Box*, 376 F.3d 305, 311 (5th Cir. 2004).

After viewing all factual inferences from the plaintiff's evidence in the light most favorable him, it is readily apparent that Roberts has established a prima facie case: he was discharged as a result of a RIF plan; his twenty-seven years of experience as a QA Inspector qualified him as an QA Inspector; he was within the protected class at the time of discharge because he was 51 years old; and he was replaced by two younger workers, Larry Cagle (37) and Jerry Spradling (45), in the sense that but for retaining the two younger workers, Roberts may have been retained. The record more than adequately supports this conclusion.

The second stage of the test for age discrimination is activated if the plaintiff proves a prima facie case of age discrimination. Because Roberts has done so, the burden shifts to the

defendant to articulate a legitimate, non-discriminatory reason for the termination. 376 F.3d at 312.

The court concludes that the defendant has indeed articulated a legitimate, non-discriminatory reason for discharging Roberts. Ostensibly, it is legitimate and non-discriminatory to retain the two of five inspectors who score the highest on the QA Manager's reduction-in-force evaluation, albeit an allegedly subjective one, after faring the best on the eleven factors used by the manager in the evaluation.

If the defendant does give a legitimate, non-discriminatory reason for the termination, which FMC has done, the third stage of the age discrimination test is activated. The plaintiff must offer sufficient proof "to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reasons, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." *Id*. Since the plaintiff has not alleged mixed-motive discrimination, only the pretext alternative is available.

The court concludes that after viewing the plaintiff's evidence in a light most favorable to him, and the court having refrained from weighing evidence and making credibility determinations, Roberts has proffered sufficient evidence to survive summary judgment. That is, when viewed through mandatory summary judgment standards, the plaintiff's evidence is adequate to create a genuine issue of material fact that can only be decided by a jury. This precludes summary judgment and necessitates a trial. In addition to Roberts's sworn statements, the evidence proffered by him is largely circumstantial. Though naturally self-serving, his sworn

statements are still evidence. Furthermore, given the nature of unlawful employment discrimination, a plaintiff often has only circumstantial evidence and his word. That is why a fact-finder is needed to weigh, and assess the credibility of, such evidence.

## III. CONCLUSION

For the reasons discussed above, the court concludes that the Defendant's Motion for Complete Summary Judgment [27-1] should be denied. Accordingly, an Order shall issue forthwith,

**THIS DAY** of June 21, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE